**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL NO. 5:16CV15-FDW-DSC**

| | |
|---|---|
| JEFFREY GLENN CALDWELL,  )<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>CAROLYN W. COLVIN,  )<br>Commissioner of Social  )<br>Security Administration,  )<br>Defendant.  )<br>_____ ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #11) and Defendant's "Motion for Summary Judgment" (document #13), as well as the parties' briefs and submissions.

This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

**I. PROCEDURAL HISTORY**

On July 2, 2012, Plaintiff filed an application for Disability Insurance Benefits ("DIB")

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on March 24, 2016, Plaintiff was entitled to file a response brief on or before August 8, 2016. Plaintiff did not file a response.

1

alleging that he became disabled on June 5, 2011 due to allergic dermatitis and high blood pressure (Tr. 21, 195, 223). The application was denied initially and upon reconsideration. (Tr. 97-100, 106-07). Plaintiff requested a hearing which was held on May 28, 2014. (Tr. 34-74, 110).

On August 15, 2014, the Administrative Law Judge ("ALJ") determined that Plaintiff was not disabled. (Tr. 19-29). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 21). The ALJ also found that Plaintiff suffered from allergic dermatitis and obesity, which were severe impairments within the meaning of the regulations id., but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 22-23). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform light work,[3] provided that he did not crawl; climb ladders, ropes or scaffolds; work at unprotected heights or around dangerous machinery; work in an environment with extreme heat or cold, humidity, dampness, or excessive respiratory irritants such as fumes or odors; work with diesel grease or other industrial chemicals, and was limited to frequent handling and fingering with his non-dominant left arm. (Tr. 23). At step four, the ALJ found that Plaintiff could not perform his past work as a diesel or maintenance mechanic. (Tr. 27).

The ALJ then shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, a Vocational Expert ("V.E.") identified jobs as production inspector, garment

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

2

folder, and cashier that Plaintiff could perform. (Tr. 28). The V.E. testified that there were 45,000 of these jobs available in North Carolina and more than 1,750,000 nationally. Id.

Based upon this testimony, the ALJ found that there were a significant number of jobs in the regional and national economy that Plaintiff could perform. (Tr. 28-29). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Id.

On December 18, 2015, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-6).

Plaintiff filed the present action on January 15, 2016. He assigns error to the ALJ's determination that he did not meet the requirements of Listing 8.05 for dermatitis and to the hypothetical question posed to the V.E..

The parties' Motions are ripe for disposition.

## II. **STANDARD OF REVIEW**

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v.

3

Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled[4] as that term of art is defined for Social Security purposes. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish his RFC by demonstrating how those impairments impact his functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

The Fourth Circuit recently held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). This explicit function-by-function analysis is not necessary when functions are irrelevant or uncontested. It is only after that function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id. The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history.

Plaintiff argues that the ALJ's hypothetical to the V.E., and consequently the RFC, should have included a limitation to avoiding "small amounts of exposure to his skin of surfactants and perfumes that are found in common everyday items such as hand soaps and shampoos" as well as a limitation to using chemical impervious gloves "when possible." Plaintiff's Brief at 7 (document

5

#12). Substantial evidence supports the ALJ's assessment of Plaintiff's work-related limitations which she included in both her hypothetical question and RFC determination.

The primary evidence relating to Plaintiff's skin condition comes from Dr. Daniel Bellingham's treatment notes beginning in June 2011, and Dr. Elizabeth Sheretz's dermatological consultation in October 2011. The ALJ thoroughly reviewed this evidence and explained how it supported the specific work-related limitations contained in the hypothetical question and RFC.

The ALJ discussed Dr. Bellingham's notes from mid-2011, when Plaintiff initially left work (Tr. 23, 25). In June, Plaintiff had dermatitis on his arms and palms (Tr. 287). In July, it had "just about cleared" (Tr. 289). In August, just after Plaintiff briefly returned to work as an auto mechanic (Tr. 41, 321–22), his dermatitis recurred. (Tr. 290, 292). In November, Dr. Bellingham noted that the dermatitis was related to substances at work, and opined that Plaintiff would need to change jobs. (Tr. 295).

In March 2012, Dr. Bellingham opined that Plaintiff could not return to work as a mechanic, stating that he could have "no exposure to grease/occupational chemicals." (Tr. 299, 301–02). The ALJ also discussed Dr. Bellingham's notes for the period after Plaintiff left work and was no longer exposed to those chemicals. (Tr. 25–26). Treatment notes from that period reflected improvement with dermatitis "resolving" in August 2012 (Tr. 390); skin "much better" in November 2012 (Tr. 392); dermatitis "controlled quite well" in February 2013 (Tr. 395); skin "quite well healed" in May 2013 (Tr. 401); and dermatitis "controlled" in November 2013 (Tr. 406).

The ALJ also considered Dr. Bellingham's written opinions (Tr. 27). She gave great weight to the doctor's opinion that Plaintiff was unable to return to his previous job and would need vocational rehabilitation. (Tr. 27, 295, 302). The ALJ also considered Dr. Bellingham's March

2012 opinion that Plaintiff was unable to return to his prior job—specifically because he could not be exposed to "grease/occupational chemicals." (Tr. 27, 301). The ALJ also noted that the evidence did not support the accompanying opinion that Plaintiff was limited to sedentary work (a finding Plaintiff does not contest) (Tr. 27, 301).

The ALJ considered a questionnaire Dr Bellingham submitted in February 2014 stating that Plaintiff met the elements of Listing 8.05. (Tr. 27, 413–16). As discussed more fully below, the ALJ explained why the evidence failed to support such a conclusion. (Tr. 23). Consequently, she gave little weight to that opinion (Tr. 27).

The ALJ also discussed notes from Dr. Sheretz, who examined Plaintiff in October 2011 and concluded that he likely had a work-related contact dermatitis. (Tr. 25, 324). Specifically, Dr. Sheretz opined that the red grease that Plaintiff had been exposed to as a diesel mechanic was the "main cause" of his contact dermatitis. His condition was possibly aggravated by other products in the workplace, including irritation from diesel fuel, oils, parts cleaner, and powdered hand soap. (Tr. 324). Dr. Sheretz specifically discussed the interplay between substances found in the home and those at work. She stated that Plaintiff "may have had exposure to fragrance and surfactant in his own home," but "the fact that he improved significantly away from work despite these ongoing exposures, and then broke out again when he returned to work support the notion that most of the problem has been related to workplace exposures." Id. Dr. Sheretz recommended that Plaintiff avoid products at home and work containing ingredients he was allergic to, and that he wear "[p]rotective equipment, such as chemical impervious gloves . . . when possible" at work. Id.

The ALJ reviewed Dr. Sheretz's findings, noting that while Dr. Sheretz did not make it expressly clear that Plaintiff should wear gloves as a mechanic or in other jobs, the implication was that he should minimize skin contact with "fragrances, etcetera," and wear gloves whenever

7

possible. (Tr. 26).

The ALJ gave great weight to Dr. Sheretz's opinion, but found that the evidence did not show that Plaintiff wore gloves at home. (Tr. 26). In fact, Plaintiff testified that he was bothered by wearing gloves because they caused him to perspire and that Dr. Bellingham had advised against using them. (Tr. 46).

The ALJ also gave some weight to the opinions of the State agency medical consultants who reviewed the evidence of record in May and July 2012 and opined that Plaintiff was capable of performing the demands of some work despite his impairments. (Tr. 27, 78–81, 89–92). Those consultants are accepted as "highly qualified . . . experts in Social Security disability evaluation," see 20 C.F.R.§ 404.1527(e)(2)(i), and their opinions constitute substantial evidentiary support for the ALJ's findings.

The ALJ considered the evidence, including the opinion evidence, and crafted a hypothetical question that incorporated all of the relevant work-related limitations supported by substantial evidence. Consistent with Dr. Bellingham's opinion that Plaintiff could have "no exposure to grease/occupational chemicals" (Tr. 301) and Dr. Sheretz's opinion that he required "workplace accommodations so that he minimizes skin contact with fragrances, surfactants, and particularly the red grease" (Tr. 324), the ALJ limited Plaintiff to work that did not involve diesel grease or other industrial chemicals. (Tr. 23, 66). Consistent with Dr. Sheretz's opinion that Plaintiff avoid fragrances (Tr. 324), the ALJ limited him to a work environment that did not involve excessive fumes or odors (Tr. 23, 66). Consistent with Plaintiff's testimony (Tr. 47) as well as the evidence (Tr. 80–81, 91) that his skin was sensitive to temperature extremes, the ALJ limited Plaintiff to a work environment not involving extreme heat, cold, humidity, or dampness. (Tr. 23, 66).

The ALJ explained why a limitation to wearing gloves was not warranted. Dr. Sheretz opined that Plaintiff should avoid exposure to workplace chemicals, and this was accommodated with the limitations included in the hypothetical and the RFC. (Tr. 26, 324). Plaintiff did not wear gloves at home (Tr. 26) and testified that gloves caused him more harm than benefit. He also testified that Dr. Bellingham advised against wearing gloves. (Tr. 46; see also Tr. 415). The ALJ properly declined to include a limitation to wearing gloves.

While Plaintiff asserts that the ALJ was obliged to include a limitation to avoiding even "small amounts of exposure to . . . surfactants and perfumes that are found in common everyday items such as hand soaps and shampoos" Plaintiff's Brief at 7 (document #12), the ALJ properly focused on Plaintiff's work-related limitations. See 20 C.F.R. § 404.1545 (emphasis added) ("When we assess your [RFC], we will consider your ability to meet the physical, mental, sensory, and other requirements of work"); Social Security Ruling 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996) (emphasis added) ("the sequential evaluation process generally must continue with an identification of the individual's functional limitations and restrictions and an assessment of his or her remaining capacities for work-related activities). Dr. Sheretz's report suggests that Plaintiff's condition improved when he was away from work despite "ongoing exposures" to fragrances and surfactants at home. (Tr. 321, 322, 324).

In sum, both the hypothetical question to the V.E. and the ALJ's RFC finding included all of the substantially supported work-related limitations.

Plaintiff next contends that the ALJ failed to properly assess whether his contact dermatitis satisfied the requirements of Listing 8.05. Plaintiff's Brief at 8–11 (document #12). The ALJ thoroughly discussed Listing 8.05, and explained why the evidence failed to establish that Plaintiff's contact dermatitis met or medically equaled the Listing. (Tr. 22–23).

9

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Likewise, "[f]or a claimant to qualify for benefits by showing that his . . . combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Id. at 531 (footnote omitted). The claimant bears the burden of proving that his impairment meets or equals a Listing. Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013).

Listing 8.05 pertains to dermatitis, including allergic contact dermatitis "with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. pt. 404, subpt. P, app. 1, § 8.05. The regulations define "extensive skin lesions" as "those that involve multiple body sites or critical body areas, and result in a very serious limitation." Id. at § 8.00C.1. This may include lesions on the palms of both hands that "very seriously limit [the] ability to do fine and gross motor movements," or other lesions that very seriously limit the ability to ambulate or use more than one extremity. Id.

The Regulations state that if an individual has skin lesions that do not meet the requirements of the Listing—that is, lesions that are not as extensive, persistent, or limiting as defined above—he or she may nevertheless experience "frequent flare[-]ups" such that the condition, when considered over time, precludes gainful activity. Id. at § 8.00C.2. If the flare-ups are sufficiently limiting, the condition may medically equal Listing 8.05. Id.

The ALJ considered counsel's argument at the hearing that Plaintiff's skin condition met Listing 8.05 because he had break-outs on the palms of his hands that persisted in excess of three months despite treatment by Dr. Bellingham. (Tr. 22, 72–73). As noted above, the ALJ also discussed the fact that Dr. Bellingham completed a questionnaire in February 2014 stating that

Plaintiff met Listing 8.05. (Tr. 23, 413–16). However, the ALJ ultimately concluded that counsel's argument and Dr. Bellingham's opinion were not consistent with the treatment records. (Tr. 23, 27).

The ALJ explained that while Dr. Bellingham noted dermatitis on Plaintiff's arms and palms in June 2011 (Tr. 287), it had "just about cleared" by July. (Tr. 289). Dr. Bellingham also noted that symptoms recurred after Plaintiff returned to work as an auto mechanic in August. (Tr. 23, 41, 290, 292, 321–22). When Dr. Sheretz examined Plaintiff in October, his hands were clear. (Tr. 322). The record established that the lesions did not persist for the requisite three months. Moreover, the recurrence in August was clearly linked to Plaintiff's brief return to work and re-exposure to the red grease and industrial chemicals that caused his condition (Tr. 23; see Tr. 41, 290, 292, 321–22, 324)—not to persistence in spite of continuing treatment. And as the ALJ explained, treatment notes from after that period did not reflect any symptoms on Plaintiff's palms. (Tr. 23 citing Tr. 294, 296, 329, 382, 389, 395, 399, 401, 405, 412).

The ALJ properly found that Plaintiff failed to show that he had extensive skin lesions on his palms that very seriously limited his ability to do fine and gross movements and that persisted for at least three months despite continuing treatment. (Tr. 22–23). See Zebley, 493 U.S. at 530; Radford, 734 F.3d at 291.

Plaintiff asserts that he had frequent flare-ups between July 2011 and July 2012 such that the ALJ should have found that his condition medically equaled Listing 8.05, as discussed in subparagraph C.2 of § 8.00. Plaintiff's treatment notes do not establish the presence of skin lesions of such severity that Plaintiff was precluded from performing any gainful activity for a continuous period of at least twelve months as required by the Regulations. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 8.00C.2. The ALJ noted that after an initial reaction in June 2011, Plaintiff's condition

had improved to the point where he could return to work in August. (Tr. 23, 41, 321–22). When his return to work caused a recurrence of symptoms, Dr. Bellingham opined that Plaintiff could "no longer work in present capacity" (Tr. 293) and recommended a "change of work" (Tr. 295). Dr. Bellingham did not state that Plaintiff was precluded from all work. As the ALJ noted, Dr. Bellingham opined that vocational rehabilitation was appropriate to prepare Plaintiff for a different line of work. (Tr. 27, 295).

The ALJ considered that Dr. Bellingham noted variable degrees of dermatitis on Plaintiff's arms (and at different points, on his chest and his groin) in late 2011 and 2012. (Tr. 25, 296, 298, 382). But Dr. Bellingham specifically stated that Plaintiff was disabled "for his profession" (Tr. 299). By August 2012, Dr. Bellingham noted that Plaintiff's dermatitis was "resolving" and "much improved," with no signs of rash. (Tr. 25, 389–90). The ALJ considered treatment notes from October and November 2012 and throughout 2013 that reflected substantial improvement and good control of symptoms. (Tr. 25–26 citing Tr. 391–92, 395–96, 401, 406).

The ALJ's finding on Listing 8.05 was consistent with the opinions of the State agency consultants who specifically considered the Listing and opined that it was neither met nor equaled. (Tr. 78, 89, 84, 95); see Social Security Ruling 96-6p, 1996 WL 374180 (S.S.A. July 2, 1996) (explaining that the signature of a State agency medical consultant on a disability determination and transmittal form "ensures that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence").

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and her ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #11) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir.

1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Frank D. Whitney.</u>

**SO RECOMMENDED AND ORDERED**.

Signed: August 25, 2016

David S. Cayer
United States Magistrate Judge